UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE FREEMAN #752710,

       Plaintiff,                                      Hon. Janet T. Neff

v.                                                        Case No. 1:19-cv-728

SCOTT L. HOLMES, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Motion for Summary Judgment Based Solely on the Failure to Exhaust Administrative Remedies of Defendants Scott Holmes, M.D., and Kyle Sperling, P.A. (the Corizon Defendants) (ECF No. 12), and the Motion for Summary Judgment Based on Failure to Exhaust and Motion to Dismiss Based on Eleventh Amendment Immunity of Defendants Quartermaster David Kimmel, Nurse Kimberly Silvernail, and Nurse Manager Kelly Stevens (the MDOC Defendants) (ECF No. 19). The motions are fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that: (1) the Corizon Defendants' motion be **DENIED**; and (2) the MDOC Defendants' motions be **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC) at Carson City Correctional Facility (DRF), sued Defendants Scott Holmes, M.D., Kyle Sperling, P.A., Quartermaster David Kimmel, Nurse Kimberly Silvernail, and Nurse Manager Kelly Stevens pursuant to 42 U.S.C. § 1983, alleging that they denied him medical care at DRF by, among other

1

things, failing to provide him deep toe box shoes in order to prevent pressure ulcers from developing on his feet.

Plaintiff alleges that he is a paraplegic and has an active medical accommodation for deep toe box shoes. On May 14, 2018, during an appointment with Defendant Holmes, Plaintiff advised him that he needed the proper shoes to stop the pressure ulcer that had developed on his left middle toe in the last several weeks. Plaintiff showed Holmes his toe, but Holmes said that he already had enough problems to deal with regarding Plaintiff's hip, and he would not deal with Plaintiff's dead toe.

On May 22, 2018, healthcare took pictures of the wound, but Defendant Holmes did not order the proper dressing changes, and the nurses at the facility refused to properly care for the wound. Plaintiff alleges that Holmes was deliberately indifferent for not writing an order for daily dressing changes to prevent his ulcers from becoming infected.

On May 25, 2018, the toe ulcer started to drain. The draining fluids had a foul odor and Plaintiff experienced pain in his left toe. Plaintiff sent a kite to be seen by healthcare.

On June 9, 2018, after Plaintiff's multiple kites for medical care went unanswered, the problems with his toe worsened, and his temperature increased to 101.2 because of the infection. On June 9, 2018, non-Defendant Nurse Vunshura[1] contacted Defendant Sperling regarding Plaintiff's temperature. Nurse Vunshura told Defendant Sperling that Plaintiff's toe was swollen, hot to the touch, and painful. Defendant Sperling told Nurse Vunshura to place Plaintiff on the call-out to see the physician the following week. Nurse Vunshura told Plaintiff that she wondered why Sperling did not just give an order for antibiotics or even send Plaintiff to the hospital.

---

[1] Plaintiff also refers to Nurse Vunshura as Nurse Vurshura. (ECF No. 1 at PageID.5.) The undersigned will refer to her as Nurse Vunshura.

Over the following two days, Plaintiff alleges he suffered severe pain, drainage, and weakness due to the infection from the wound on his left toe. Defendant Sperling failed to email the RN 13 Nurse and Quarter Master regarding Plaintiff's serious medical needs. On June 11, 2018, a physician from a different facility examined Plaintiff's infection and started him on antibiotics. That same day, Plaintiff wrote a grievance regarding healthcare's failures to provide him the proper shoes (which led to the ulcer and his infection), to send him to the hospital, and to give him antibiotics timely.

On June 12, 2018, Plaintiff told Defendant Holmes that he needed the proper shoes to prevent his pressure ulcer from getting worse. The infected foot continued to get worse by turning black, swelling, draining, and causing Plaintiff significant pain. On June 14, after Plaintiff complained to multiple nurses and physicians about feeling sick due to the infection, a physician started Plaintiff on Rosaphan, an antibiotic administered by injection.

On June 15, 2018, Plaintiff sent a kite to healthcare regarding proper shoes. Defendant Silvernail received the kite and told Plaintiff to speak with the doctor at his upcoming appointment. On June 19, 2018, Plaintiff saw Defendant Holmes regarding his toe. Defendant Holmes stated that it was worse than he thought and asked Plaintiff how he would feel about amputation. Plaintiff told Defendant Holmes that had Plaintiff been given the proper shoes and dressing changes the toe never would have been at risk for amputation. Defendant Holmes told Plaintiff, "write a grievance or file a lawsuit if you don't like it. I have planny [sic] grievances and lawsuites [sic] under my belt that got tossed."

On June 26, 2018, Defendant Holmes is alleged to have lied and said that he submitted the request for deep toe box shoes to Defendant Stevens so that she could order the proper shoes, which would violate MDOC Policy Directive 04.06.160(E), (F), and (H). Defendant Holmes told

3

Plaintiff that X-rays taken on June 22, 2018, only showed muscle damage in the left foot due to swelling from the infection.

On July 2, 2018, Defendant Stevens told Plaintiff that she would forward his June 30, 2018 kite request for special shoes to the Quarter Master, who would then order the shoes. By July 7, Plaintiff's left foot was swollen, and he was unable to wear a shoe and had to wear a medical sandal instead. On July 9, 2018, Plaintiff was finally called out to the Quarter Master for his deep toe box shoes.[2] Defendant Kimmel told Plaintiff that he could get a new pair only if he turned in his old pair. Plaintiff told Kimmel that he did not already have a pair of deep toe box shoes, which was why he was suffering from pressure ulcers. Kimmel told Plaintiff that he "didn't give a horse's ass about ulcers," and would not order a new pair of shoes until Plaintiff turned in his old pair.

On July 12, Plaintiff experienced chills, constant shaking, and severe pain in his left foot and had a temperature of 101.4. Plaintiff was taken to Sparrow Hospital in Carson City, where he was treated for cellulitis in his foot and was given an antibiotic intravenously. Plaintiff was given pain medication and discharged the same day to Duane L. Waters Hospital for additional treatment. Plaintiff remained at Duane L. Waters Hospital, where he was treated with antibiotics, until July 19, 2018. While he was there, physician Danielle Alford submitted a request for a different type of shoe. On July 20, Plaintiff filed a grievance regarding the issue.

On July 23, Plaintiff's middle toe on his right foot developed pressure ulcers. Plaintiff was given a second medical sandal. That same day, Plaintiff spoke with Defendant Holmes about

---

[2] Plaintiff alleged in his complaint that he was finally called out to the Quarter Master for deep toe box shoes on July 17, 2018. (ECF No. 1 at PageID.6.) In his response to the MDOC Defendants' motion and in his supporting declaration, Plaintiff states that the correct date should have been July 9, 2018. (ECF No. 23 at PageID.274; ECF No. 23-1 at PageID.280.) Plaintiff's correction makes sense because Plaintiff was at Duane L. Waters Hospital on July 17.

MSI tennis shoes that had been approved. Both of Plaintiff's feet had developed pressure ulcers several days before. Defendant Holmes denied Plaintiff's request for the medical shoes and took no action to send a request for shoes to accommodate Plaintiff's condition. A request for MSI tennis shoes was finally submitted to Defendant Stevens on July 25 (six days after Plaintiff returned from the hospital).

Plaintiff claims that his pain and suffering due to his pressure ulcers could have been avoided had Defendants responded to Plaintiff's serious medical needs by providing him proper shoes.

Plaintiff's claims for deliberate indifference to his serious medical needs are as follows: (1) Defendant Holmes failed to order dressing changes to prevent future infections when he first discovered the pressure ulcer in Plaintiff's left foot; (2) Defendants Holmes, Sperling, Silvernail, and Stevens ignored Plaintiff's serious medical needs when they failed to send an email to order Plaintiff special needs shoes, after learning that Plaintiff had an accommodation for such shoes and after Plaintiff had developed ulcers in 2018 from not having the proper shoes; and (3) Defendant Kimmel failed to measure Plaintiff's foot for special shoes and to order them to prevent additional ulcers and keep his current infection from worsening.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

5

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## DISCUSSION

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion,"

6

defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response or, if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response or, if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motions, Defendants attach Step III Grievance Reports showing grievances that Plaintiff exhausted through Step III during the relevant period at DRF.

## I. Corizon Defendants' Motion

Defendants identify two grievances that are relevant to Plaintiff's claims, both of which were rejected at all three steps on procedural grounds.

### A. Grievance DRF-18-06-1464-28C (1464 Grievance)

Plaintiff filed the 1464 Grievance on June 11, 2018, and it was rejected for containing multiple issues. (ECF No. 12-3 at PageID.157.) The rejection was upheld at Steps II and III. (*Id.* at PageID.154–56.) This grievance identified the date of the incident as June 8, 2018. Plaintiff stated that he attempted to resolve the issue on June 8, 2018, when he wrote a kite to Nurse Vunshura and had a temperature of 101.2. Plaintiff also indicated that P.A. "Spotters," who was on call that date, did not order anything. Plaintiff explained that he was writing the grievance against MDOC healthcare officials "for failing to provide me with the proper shoes to prevent pressure ulcers." (*Id.* at PageID.157.) Plaintiff said that, as a result of that failure, his left middle toe became infected, with swelling and drainage, and temperature of 101.2 on June 9.[3] Plaintiff also said that, after his toe became infected, he was not sent to the hospital and had to wait until June 11 to get any antibiotics. Plaintiff said that "this [the lack of proper shoes] was an ongoing problem," and that when he spoke to Defendant Holmes on May 14, Defendant Holmes told Plaintiff that he had sent an order or request for special shoes but that he "never did."

Defendants Holmes and Sperling argue that the 1464 Grievance failed to properly exhaust Plaintiff's claims. First, they argue that the grievance was properly rejected for raising multiple

---

[3] Plaintiff references 2017 twice in his grievance, but in context, it is obvious that this was a mistake.

8

issues. Second, they argue Plaintiff failed to file his grievance within the time specified under the MDOC's grievance policy. Finally, they argue that Plaintiff failed to name them in his grievance.

First, as to the multiple issue rejection, the MDOC grievance policy provides that a grievance may be rejected if, among other things, it "contains multiple *unrelated* issues." MDOC Policy Directive 03.02.130 ¶ G.1 (italics added). It is important to note that the plain language of the policy makes clear that a grievance containing multiple related issues is not subject to being rejected. In *LaFountain v. Martin*, 334 F. App'x 738 (6th Cir. 2009) (per curiam), the plaintiff filed a grievance alleging that an MDOC employee retaliated against him for filing grievances by telling other prisoners that the plaintiff was a snitch and a sexual predator. *Id.* at 740. The plaintiff also claimed that his cell was robbed due to the warden's and assistant warden's lack of supervision over the employee. The grievance was rejected because it raised multiple issues. *Id.* The Sixth Circuit concluded that the grievance did not raise multiple unrelated issues:

> It raises one claim, namely, that Martin retaliated against LaFountain for having filed grievances by labeling him a snitch and a sexual predator in order to motivate other prisoners to take hostile action against him. The hostile action that LaFountain claims to have suffered as a result of being labeled a snitch and a sexual predator, such as being accosted in the bathroom and having his cell robbed, is merely the harm he suffered as a result of the alleged retaliation.

*Id.* at 741. In *McDuff v. Addis*, No. 1:17-CV-912, 2018 WL 3239491 (W.D. Mich. July 3, 2019), the court concluded that the grievance coordinator employed "an unreasonable application of Policy Directive 03.02.130 ¶ G(1)" on the basis of multiple issues because the events in the grievance were "*clearly* related." *Id.* at *3 (emphasis in original). The court noted that the grievance raised four events pertaining to a single issue, the defendants' deliberate indifference to the plaintiff's health and safety due to being attacked by other inmates. The court deemed the two attacks and two citations the plaintiff received for fighting, all of which the plaintiff cited in his grievance, sufficiently related to the issue of the defendants' failure to prevent attacks on the

9

plaintiff. *Id.* at *4. On the other hand, a grievance that "addressed not only a claim regarding [the prisoner's] lost property, but also claims of arbitrary punishment, deliberate indifference to medical needs, improper assignment to a smoking unit, and arbitrary refusal to allow him to see the quartermaster" was properly rejected for containing multiple issues. *Crump v. Caruso*, No. 2:09-CV-194, 2010 WL 3720068, at *3 (W.D. Mich. Sept. 17, 2010).

As in *McDuff*, the issues Plaintiff raised in his grievance were "*clearly* related." Plaintiff stated explicitly that his grievance concerned MDOC healthcare officials' failure to provide him proper shoes, which led to pressure ulcers and ultimately an infection. Plaintiff's complaints about not being sent to the hospital and having to wait until June 11 to get antibiotics for the infection he developed arose directly from healthcare officials' failure to provide Plaintiff the proper shoes. Defendants argue that the grievance was properly rejected because each complaint would have required a separate investigation. (ECF No. 17 at PageID.209.) This argument lacks merit. First, it is not necessarily true that a separate investigation would have been required for each discrete issue Plaintiff raised because Plaintiff claimed that healthcare officials were responsible for all of the harm in the grievance, which could have been covered by a single investigation. Second, Defendants read an unwarranted limitation into the grievance policy—separate investigations—that is not a justification for rejecting a grievance and was never applied.

As for timeliness, Defendants state that the grievance was untimely as to Defendant Holmes because Plaintiff stated that he tried to resolve the issue with Defendant Holmes on May 14, 2018, but Plaintiff did not file a Step I grievance against Holmes within five days, as required by the grievance policy. This argument mischaracterizes the grievance. Plaintiff stated that Defendant Holmes told him on May 14 that he had sent an accommodation for special shoes, but he never made the request. Because Defendant Holmes told Plaintiff that he had initiated a

10

request for special shoes, Plaintiff had no reason to file a grievance against Defendant Holmes on or before May 19. In fact, Plaintiff said that Defendant Holmes never ordered the shoes.[4] Plaintiff also stated that the issue concerning lack of proper shoes was an ongoing problem. Courts have held that when a prisoner's grievance concerns lack of medical care for a chronic medical condition that the prisoner identifies as "ongoing," the purposes of exhaustion will have been satisfied so long as the prisoner has provided prison officials sufficient information to address the issue. In *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008), the court observed that while the time for filing a grievance for an acute medical condition, such as a heart attack, can be readily ascertained, "[t]he seriousness of a chronic condition may not become obvious to prison officials until some time passes, and the indifference to that condition—and the resulting pain suffered by the prisoner that equates to the infliction of punishment—may not become manifest until then as well." *Id.* at 783. The court said that such a condition is "properly identified as 'ongoing,' and a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it." *Id.* at 783–84. Here, Plaintiff's lack of proper shoes to ensure that he did not develop pressure ulcers and infection was an ongoing issue at the time Plaintiff filed his grievance. *See Ketzner v. Douglas*, No. 08-CV-13299, 2009 WL 1655004, at *12–13 (E.D. Mich. June 11, 2009) (concluding that the plaintiff's grievance regarding the defendant's failure to refill the plaintiff's prescription was an ongoing issue that rendered the grievance timely, as the issue remained unaddressed and prison officials still had the power to address the grievance). Finally, the grievance coordinator did not reject the grievance for being untimely. *See Owens v. Corr. Med.*

---

[4] Defendants also argue that Plaintiff did not make any attempt to address the issue with them but instead attempted to resolve it with three separate nurses. (ECF No. 17 at PageID.210.) As Defendants raise this argument for the first time in their reply, the Court declines to address it.

*Servs., Inc.*, No. 1:07-CV-934, 2008 WL 4534424, at *5 (W.D. Mich. Sept. 30, 2008) (stating that because the MDOC did not reject the plaintiff's grievance as untimely, the defendants could not argue that the grievance was procedurally defaulted for that reason).

As for the requirement that Plaintiff name Defendants in his grievance, MDOC Policy Directive 03.02.130 ¶ R requires a prisoner to provide the "names of all those involved in the issue being grieved." *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). Defendants' argument as to Defendant Holmes is puzzling, as the grievance's subject was healthcare officials' failure to provide Plaintiff proper shoes, and Plaintiff specifically mentioned his interaction with Defendant Holmes on May 14 and Defendant Holmes's failure to send an accommodation for shoes in spite of a representation that he had done so. With regard to Defendant Sperling, Defendants are correct that Plaintiff did name him in the grievance, although Plaintiff mentioned "P.A. Spotters" who was on call on June 9 and spoke with Nurse Vunshura about Plaintiff's fever and did not order anything for it. Nonetheless, courts have held that, even where the prisoner fails to specifically name the individual, a grievance will fulfill the purposes of exhaustion and give the defendant fair notice so long as it provides sufficient information to allow prison officials to identify the person being grieved. *See Burton v. Kakani*, No. 09-10893, 2009 WL 3101046, at *7 (E.D. Mich. Sept. 23, 2009) (citing *Perry v. Green*, No. 08-12740, 2009 WL 81447, at *15 (E.D. Mich. Mar. 26, 2009)) (concluding that the plaintiff substantially complied with the MDOC's grievance procedures by providing sufficient information to allow prison officials to identify the defendants as the persons being grieved); *Stevenson v. Mich. Dep't of Corr.*, No. 1:07-CV-213, 2008 WL 623783, at *1 (W.D. Mich. Mar. 4, 2008) (noting that while the plaintiff failed to specifically name each individual defendant in his grievance, "he did generally identify each

Defendant and thereby provided sufficient information to properly exhaust his claim against all Defendants").

Thus, the undersigned concludes that this grievance exhausted Plaintiff's claims against Defendants Holmes and Sperling.

### B. Grievance DRF-18-07-1819-28e (1819 Grievance)

In the 1819 Grievance, filed on July 20, 2018, Plaintiff continued to complain about not being provided proper shoes to accommodate his foot and indicated that he had been hospitalized due to the pressure ulcer that had infected his foot. (ECF No. 12-3 at PageID.148.) Plaintiff identified the date of the incident as July 12, 2018—the date Plaintiff entered the hospital due to the infection. Plaintiff said that he asked the listed individuals multiple times to provide the proper shoes, but he still had not received proper shoes. Plaintiff also said that his late filing should be excused because he had been hospitalized at Duane L. Waters Hospital. The 1819 Grievance was rejected as untimely at Step I. (*Id.*) Plaintiff appealed to Steps II and III, but the rejection was upheld. (*Id.* at PageID.145–47.)

Defendants Holmes and Sperling argue that the 1819 Grievance was rejected as untimely and, therefore, was not properly exhausted. Defendants state that, because Plaintiff attempted to resolve the issue with them on June 30, 2018, he was required to file his grievance by July 5, 2019. (ECF No. 12 at PageID.129.) Defendants argue that because Plaintiff was sent to the hospital on July 12, 2018, he lacked a valid excuse for not filing a timely grievance. Plaintiff responds that because the incident date was July 12, 2018, his grievance was timely because he filed it within one day after he was released from the hospital. Plaintiff further notes that the grievance policy excuses compliance for "circumstances beyond [the prisoner's] control." (ECF No. 15 at PageID.194 (citing Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P).)

13

As with the 1464 Grievance, the undersigned concludes that the 1819 Grievance properly exhausted Plaintiff's claims against Defendants Holmes and Sperling. First, as noted above, the 1464 Grievance properly exhausted Plaintiff's claims against Defendants Holmes and Sperling for not providing him the proper shoes and not treating the infection that Plaintiff experience because he did not have the proper shoes. Although the 1814 Grievance mentioned Plaintiff's hospital admission, at bottom, it continued Plaintiff's complaint about Defendants' failure to provide the proper shoes; the hospital admission resulted from that failure. Second, as with the 1464 Grievance, the crux of Plaintiff's grievance—not being provided proper shoes—was an ongoing medical issue that not been resolved. Thus, the grievance was timely under the rationale of *Ellis*, *supra*.

## II. The MDOC Defendants' Summary Judgment Motion

In their motion, the MDOC Defendants argue that neither the 1464 Grievance nor the 1819 Grievance exhausted Plaintiff's claims against them. Plaintiff concedes that the 1464 Grievance did not exhaust his claims against the MDOC Defendants, and he agrees that the Court should grant the motion as to Defendants Silvernail and Stevens. (ECF No. 23 at PageID.268, 273, 277.) Plaintiff argues, however, that the 1819 Grievance was timely with regard to his claim against Defendant Kimmell because he attempted to resolve the issue with Defendant Kimmel on July 9, 2018, and he was at Duane L. Waters Hospital during the five-day period in which he was required to file his Step I grievance. Plaintiff argues that his hospitalization was a valid reason for the delay, as recognized by Policy Directive 03.02.130 ¶ G.3. (*Id.* at PageID.275.) In reply, the MDOC Defendants argue that Plaintiff still could have filed a grievance while hospitalized because he would have had access to grievance forms at Duane L. Waters Hospital, an MDOC facility.

14

For the reasons stated above, the 1819 Grievance concerned an ongoing medical issue that was unresolved at the time Plaintiff filed the grievance. Plaintiff alleged that he had an accommodation for proper shoes but that Defendants either failed or refused to provide them. Thus, the 1819 Grievance should be deemed timely under the rationale of *Ellis*. Even if *Ellis* does not apply, a genuine issue of fact remains as to whether Plaintiff had access to grievance forms while at the hospital as Defendants claim. In his second declaration in response to the Corizon Defendants' motion, Plaintiff states that "[w]hile being at Duane L. Waters from July 12, 2018–July 19, 2018 . . . I was . . . unable to obtain grievances." (ECF No. 15-2 at PageID.204.) Accordingly, the MDOC Defendants' motion should be denied as to Defendant Kimmell. Plaintiff's claims against Defendants Silvernail and Stevens should be dismissed without prejudice.

### III. MDOC Defendants' Motion to Dismiss

The MDOC Defendants argue that Plaintiff's claims against them in their official capacities should be dismissed based on Eleventh Amendment immunity. Plaintiff failed to respond to this portion of Defendants' motion. Defendants are correct that Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment. *Cady v. Arenac Cty.*, 574 F.3d 334, 344 (6th Cir. 2009). Accordingly, Plaintiff's official-capacity claims should be dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, the undersigned recommends that the Corizon Defendants' Motion for Summary Judgment Based Solely on the Failure to Exhaust Administrative Remedies (ECF No. 12) be **denied**. The undersigned further recommends that the MDOC Defendants' Motion for Summary Judgment Based on Failure to Exhaust and Motion to Dismiss Based on

Eleventh Amendment Immunity (ECF No. 19) be **granted in part and denied in part**, dismissing Plaintiff's claims against Defendants Silvernail and Stevens without prejudice for failure to exhaust, dismissing the official-capacity claims against Silvernail, Stevens, and Kimmell with prejudice, and denying the motion for summary judgment based on failure to exhaust as to Defendant Kimmell.

**NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: June 24, 2020　　　　　　　　　　　　　　　　　 /s/ Sally J. Berens
　　　　　　　　　　　　　　　　　　　　　　　　　　　SALLY J. BERENS
　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge